IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

HARRY BRIGGS,　　　　　　　　　　　)
　　　　　Petitioner,　　　　　　　　　)　　　C.A. No. 06-244 Erie
　　　　　　　　　　　　　　　　　　　)
　　　　　v.　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)　　　District Judge McLaughlin
WARDEN H.J. MARBERRY,　　　　　　)　　　Chief Magistrate Judge Baxter
　　　　　Respondent.　　　　　　　　　)

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.　　RECOMMENDATION**

It is respectfully recommended that Petitioner's motion for summary judgment [Document # 10] be denied, that Petitioner's Amended Petition for Writ of Habeas Corpus be denied, and that a certificate of appealability be denied.

**II.　　REPORT**

Petitioner's amended habeas petition is filed pursuant to 28 U.S.C. § 2241. [Document # 13]. He is currently incarcerated at the Federal Correctional Institution at McKean ("FCI McKean"), located in Bradford, Pennsylvania. Prior to that, he was incarcerated at the Federal Correctional Institution at Schuylkill, located in Minersville, Pennsylvania ("FCI Schuylkill"). Petitioner challenges a disciplinary action taken in connection with an incident report that was initially issued on March 13, 2006 and which charged him with Possession of a Weapon, in violation of Federal Bureau of Prisons ("BOP") Disciplinary Code 104. As relief, he seeks the expungement of the incident report and the restoration of any lost or forfeited good conduct time.

　　**A.　　Relevant Factual and Procedural History**

On September 29, 2000, the United States District Court for the Middle District of Pennsylvania sentenced Petitioner to an 111-month term of imprisonment for "Making a False Statement in the Acquisition of a Firearm" and "Use of a Firearm in a Drug Trafficking Crime," in

1

violation of 18 U.S.C. §§ 922(a)(6), 2, and 924(c). His projected release date is currently set at November 13, 2008.

On March 13, 2006, Senior Officer Specialist D. Krebs ("Krebs") of FCI Schuylkill issued Incident Report 1444082, charging Petitioner with Possession of a Weapon, in violation of BOP Disciplinary Code 104. (Ex.[1] 2a). The Incident Report indicated that on that date, during a search of cubical A07-204, assigned to "inmate Sawyer,"[2] Krebs discovered a sharpened metal rod measuring approximately seven inches with a piece of torn linen tied to one end as a lanyard. This instrument was discovered in the metal housing of the desk light in the cubical. That same day, a lieutenant at FCI Schuylkill delivered the Incident Report to Petitioner and advised him of his rights. The lieutenant asked Petitioner if he wanted to make a statement, and Petitioner stated: "I know nothing about the knife, but I will take the blame for the weapon. It must have been there before I got to that cell." (Id. at 2). There is no indication that Petitioner questioned the reference to "inmate Sawyer" or contended that he was not an occupant of cubicle A07-204.

On March 15, 2006, a Unit Discipline Committee ("UDC") hearing was held at FCI Schuylkill. (Ex. 2d). At the hearing, Petitioner told the UDC: "[i]t's not mine. I was set up. I had three cellies. I'm too short for that." (Id. at 1). At the conclusion of the hearing, the UDC referred the incident to the Discipline Hearing Officer ("DHO") for disposition. The UDC advised Petitioner of his rights before the DHO. (Ex. 2b). Petitioner was also asked if he wanted a staff representative and witnesses at the DHO hearing, and he declined both. (Ex. 2c).

On March 27, 2006, the DHO hearing was held at FCI Schuylkill. Petitioner told the DHO that he took responsibility for the weapon because he had been in the cell for the past two years and because he felt he had no choice. The DHO noted that Petitioner raised no procedural concerns. (Ex. 2d at 1). He did not question the reference to "inmate Sawyer" or contend that he was not an

---

[1] All "Ex." citations are to those documents appended to the Response at Docket # 15.

[2] The record does not indicate who "inmate Sawyer" is and if he was Petitioner's cellmate.

2

occupant of the cubicle in which the weapon was found. At the conclusion of the hearing, the DHO determined that Petitioner had committed the prohibited act as charged. In making his determination, the DHO relied upon the statement of Krebs and a photograph of the weapon, which corroborated the description of the weapon that Krebs had provided. The DHO sanctioned Petitioner to 60 days disciplinary segregation, disallowance of 54 days of good conduct time, forfeiture of 297 days of non-vested good conduct time, a one-year loss of telephone privileges, and a one-year loss of visiting privileges. He also recommend a disciplinary transfer. (Id. at 2).

On April 10, 2006, Petitioner appealed the actions taken by the DHO, asserting that he did not know the weapon was in his cubicle and that he should not be held responsible for something a cellmate may have done. He also claimed that the meaning of Disciplinary Code 104, Possession of a Weapon, was unconstitutionally vague. (Ex. 1b at 1-2). In a response dated May 8, 2006, the BOP's Regional Office denied Petitioner's appeal, noting that Petitioner is responsible for contraband found in his cubicle. (Id. at 3-4). On May 5, 2006, Petitioner was transferred from FCI Schuylkill to FCI McKean. On or about June 21, 2006, he appealed the Regional Office's decision to the BOP's Central Office raising the same arguments that he had previously raised. (Id. at 5-6). In a response dated August 24, 2006, Harell Watts, Administrator, National Inmate Appeals, informed Petitioner that his Central Office Appeal was partially granted. He explained:

> You request expungement of [incident report # 1444082].
>
> Our review of this disciplinary matter revealed an error occurred when the incident report was prepared. The description of the incident (Section 11 of the incident report) did not identify you as an occupant of the cell in which the weapon was located. *This incident report is being returned to the prison to be rewritten and for new discipline hearings to be conducted*.

(Id. at 7 (emphasis added)).

In a memorandum to the Warden of FCI McKean, Watts instructed that Incident Report 1444082 be rewritten to specify that Petitioner was assigned to the cell in which the weapon was discovered, and to consider, if appropriate, conducting new discipline hearings. (Ex. 2e).

On or about September 22, 2006, Krebs amended Incident Report 1444082 to correct the error. (Ex. 2f). That same day, a staff member delivered the amended Incident Report to Petitioner and advised him of his rights during the disciplinary process. Petitioner stated that he understood

3

his rights, but declined to make a statement. The amended Incident Report then was referred to the UDC for an initial hearing. (Id. at 2).

On September 27, 2006, the UDC convened for a hearing. At the conclusion of the UDC hearing the amended Incident Report was referred to the DHO for a re-hearing. (Id. at 1). Petitioner once again was advised of his rights at the DHO hearing. (Ex. 2g). He requested a staff representative to assist him at the DHO hearing and identified witnesses from FCI Schuylkill who could support his defense that he was "set up." (Ex. 2h). FCI McKean staff member Richard Colosimo agreed to serve as Petitioner's staff representative. (Ex. 2i).

On October 24, 2006, Krebs issued a "MEMORANDUM FOR ALL CONCERNED" in which he explained that he was the staff member who had prepared Incident Report 1444082 on March 13, 2006. He stated that he had erroneously identified "inmate Sawyer" as the inmate who was assigned to cubicle A07-204. He explained that he should have identified Petitioner as the inmate assigned to the cubicle. Krebs indicated that when this error came to his attention, he redrafted the Incident Report to correct his error. (Ex. 2j).

In the meantime, on October 23, 2006, Petitioner had initiated the instant federal habeas proceedings with this Court. [Document # 2]. On January 10, 2007, the Respondent submitted an Answer noting that the case was not yet ripe for review because Petitioner was still exhausting the administrative review process. [Docket # 8].

On February 15, 2007, the DHO hearing for amended Incident Report 1444082 was held at FCI McKean. (Ex. 2k). Petitioner's staff representative, Colosimo, stated that Petitioner worked for him in the electric shop at FCI McKean and that he was a good worker and was never a problem. Petitioner stated that he did not know anything about the weapon in question. He asserted that he should not be held responsible for what his cellmate may have done. He added that he could not see inside the light fixture and would have no way of knowing that anything was inside it.

The DHO also considered written statements from three fact witnesses identified by

4

Petitioner.[3]  The witnesses all indicated that the weapon was found in Petitioner's cubicle, but expressed surprise that he would have possessed the weapon.  One witness wrote that Petitioner's cellmate had told him that the Lieutenant had stated to Petitioner and the cellmate that one of them "better own up to the weapon or both of you were going to the hole."  (Id. at 5).  Another of the witnesses explained that both Petitioner and his cellmate were sent to the Special Housing Unit.  (Id.)

After considering all of the above-cited evidence, the DHO determined that Petitioner committed the prohibited act of Possession of a Weapon.  He rejected Petitioner's defense to the charge, explaining that:

> The DHO gave greater weight to the reporting staff member's written statement that during a shakedown of your assigned cell, he discovered a sharpened metal rod measuring approximately 7 inches with a piece of torn linen tied to one end as a lanyard, hidden in the metal housing of the desk light.  The desk light is an area that is accessible to all the inmates assigned to that cell.  *All the inmates assigned to that cell are responsible to keep all the common areas of the cell free from contraband. You failed to present any evidence that the weapon in question was not found in a common area of the cell in which you were assigned.*

(Id. at 3 (emphasis added)).  The DHO imposed the same sanctions that had previously been imposed:  the disallowance of 54 days good conduct time, forfeiture of 297 days good conduct time, 60 days disciplinary segregation, and a one-year loss of telephone and visiting privileges.  He also recommended a disciplinary transfer.  (Id.)

Petitioner appealed the DHO's decision to the BOP's Regional Office, and when that appeal was denied, he filed an appeal to the BOP's Office of General Counsel.  (Ex. 1c).  He complained that the remand was issued on August 24, 2006, but he did not receive a copy of the amended Incident Report until September 22, 2006.  He claimed that BOP regulations required that an inmate receive notice of the charges against him within 24 hours of the time staff becomes aware of the offense, and because approximately 28 days expired between the issuance of the remand and the date staff delivered the amended Incident Report, the staff did not comply with BOP regulations and policy.  He also claimed that he was innocent.

---

[3] The DHO also reviewed written statements from two character witnesses identified by Petitioner.

5

On July 9, 2007, Harrell Watts denied Petitioner's appeal. (Id. at 5). He explained to Petitioner that the DHO "determined the greater weight of the evidence supported the conclusion you committed the prohibited act." (Id.) He rejected Petitioner's contention that he received the amended Incident Report in an untimely manner, and further informed him that "[t]here is no evidence [the remand] process had an adverse [effect] on your ability to be advised of and defend yourself against the charges prior to the hearing." (Id)

On August 17, 2007, Petitioner filed with this Court an Amended Petition for habeas relief. (Docket # 13). In the amended petition, he claims his due process rights were violated by the re-issuance of the corrected Incident Report. He asserts that the Incident Report should have been expunged and not remanded for a new hearing. He also alleges that the evidence was insufficient to support the finding that he committed the prohibited act. As relief, he seeks the expungement of the amended Incident Report and the restoration of any lost or forfeited good conduct time.

On October 9, 2007, Respondent filed the Response to Petitioner's Amended Petition, (Docket # 15), to which Petitioner filed a Reply (Docket # 16). The petition is now ripe for review.

### B.  Subject Matter Jurisdiction

A challenge to a federal sentence as imposed must be made under 28 U.S.C. § 2255, but a claim concerning execution of a federal sentence by the BOP is properly brought under 28 U.S.C. § 2241. Bennett v. Soto, 850 F.2d 161 (3d Cir. 1988); Gomori v. Arnold, 533 F.2d 871 (3d Cir. 1976). "Execution of a sentence" includes matters such as the computation of a prisoner's sentence by the BOP, prison disciplinary actions, prison transfers, and type of detention. Because Petitioner is challenging the execution of his sentence in the amended petition for habeas relief, this proceeding is properly brought under 28 U.S.C. § 2241.

### C.  Exhaustion of Administrative Remedies

A federal prisoner seeking habeas relief under 28 U.S.C. § 2241 first must exhaust administrative remedies before bringing his claim to federal court. United States v. Wilson, 503 U.S. 329, 334-35 (1992); Moscato v. Federal Bureau of Prisons, 98 F.3d 757 (3d Cir. 1996). The

6

BOP is the agency charged with administering the federal prison system, Wilson, 503 U.S. at 334-35, and for all federal prisoners challenging BOP determinations, the initial venue is the administrative process. The BOP codified its Administrative Remedy Program in 28 C.F.R. Part 542, which provides detailed procedures and guidelines for federal prisoners seeking administrative review of any aspect of their confinement. Petitioner has pursued an appeal of the challenged action through all levels of administrative review and, hence, available administrative remedies have been exhausted in this case.[4] See 28 C.F.R. §§ 542.13-15.

### D. Discussion

#### 1. Petitioner Was Not Deprived of Due Process

Petitioner has failed to establish that he was denied any process due to him under the Due Process Clause or under applicable BOP regulations. This Court's analysis of Petitioner's claims begins with the United States Supreme Court's decision in Wolff v. McDonnell, 418 U.S. 539 (1974), which is the seminal case concerning the due process rights of federal prisoners during disciplinary proceedings. In that case, the Supreme Court noted that a prisoner's accumulation of good time credits, which can affect the length of his incarceration, may give rise to a constitutionally protected liberty interest. Wolff, 418 U.S. at 556-57. However, the Supreme Court noted further that this does not entitle prisoners to the full panoply of rights afforded a defendant in a criminal prosecution when these credits are forfeited pursuant to a prison disciplinary proceeding. Id. Instead, a prisoner is entitled only to procedures sufficient to ensure that the protected interest (i.e., good time credit) "is not arbitrarily abrogated." Id. at 557.

In Wolff, the Supreme Court enumerated the following five procedural safeguards that are

---

[4] Petitioner claims that Respondent should be estopped from arguing against the merits of his claims because in the initial response (Document # 8) it was asserted that Petitioner's claims were not yet exhausted. His argument is rejected. When Respondent filed the initial response in January 2007 (Document # 8), Petitioner was in the midst of his administrative appeal process, and therefore Respondent appropriately argued that the claims raised in the petition were not yet exhausted. Once Petitioner's administrative appeal process concluded, he filed his amended petition (Document # 13) and Respondent appropriately filed a response addressing the merits of the claims raised in that amended petition. (Document # 15).

7

required in a prison disciplinary proceeding: (1) the right to appear before an impartial decision-making body; (2) written notice of the charges 24 hours in advance of the disciplinary hearing; (3) an opportunity to call witnesses and present documentary evidence, provided the presentation of such does not threaten institutional safety or correctional goals; (4) assistance from an inmate representative if the charged inmate is illiterate or if complex issues are involved; and (5) a written decision by the factfinder as to the evidence relied upon and the rational behind the disciplinary action. Id. at 563-72.

The BOP also has established regulations that set forth the procedures for disciplinary actions. These regulations track the requirements set forth in Wolff, and in some respects exceed the required process set forth in that case. See 28 C.F.R. §§ 541.10-22. Under the relevant agency regulations, when BOP staff consider informal resolution of an inmate violation of BOP rules and regulations to be inappropriate, an incident report must be prepared. 28 C.F.R. § 541.14(a). Staff must investigate the incident promptly, unless circumstances beyond the control of the investigator intervene. 28 C.F.R. § 541.14(b). Additionally, staff shall give each inmate charged with violating a BOP rule a written copy of the charge(s) against him or her at the beginning of the investigation and ordinarily within 24 hours of the time staff become aware of the inmate's involvement in the incident. 28 C.F.R. §§ 541.14(b)(2) & 15(a). Upon the completion of the investigation, the incident report may be referred to the UDC for an initial hearing. 28 C.F.R. § 541.15. After the hearing, the UDC may either reach a finding as to whether a prohibited act was committed or refer the case to the DHO for further hearing. 28 C.F.R. § 541.15(f). The regulations provide an inmate with the following rights before the DHO: (1) no less than 24 hours advance written notice of the charges; (2) a full time staff member to represent him at the DHO hearing; (3) the opportunity to make a statement and to present documentary evidence and witnesses; (4) the right to be present through the DHO hearing; (5) the right to have the DHO consider all evidence presented at the DHO hearing; and (6) the right to a written report of the DHO's findings, the DHO's decision, and to be informed of the specific evidence relieved upon by the DHO. 28 C.F.R. § 541.17.

The procedures set forth in Wolff and in the BOP regulations were followed in this case. Petitioner argues that there was an improper delay in the issuance of the amended Incident Report,

but the regulations do not place a strict time frame on the issuance of amended incident reports after a remand. See 28 C.F.R. § 541.19. Moreover, the due process requirements set forth in Wolff provide only that the inmate receive prior written notice of the charges at least 24 hours prior to the hearing. 418 U.S. at 563-72. In this case, the issuance of the amended Incident Report did not deny him the minimum 24 hours in which to prepare for the hearing.

Although Petitioner may be dissatisfied with the fact the original Incident Report was remanded and not expunged, Petitioner's dissatisfaction does not equate to a due process violation. BOP regulations and policy authorize reviewing officials to remand an incident report and typically require that on remand no increase in sanctions be imposed. 28 C.F.R. § 541.19; BOP Program Statement 5270.07, Inmate Discipline and Special Housing Units, Chapt. 8, Pages 1-2. Here, the Incident Report was remanded so that the error in the original Incident Report could be corrected, a new round of disciplinary hearings and appeals occurred, and Petitioner did not receive an increase in sanctions from that which had previously been imposed. (Ex. 2a at 1).

Petitioner insists that the BOP does not have the authority to correct staff errors. This argument is meritless. Contrary to Petitioner's contention, nothing in BOP policy prohibits it from correcting an error in an incident report. Moreover, Petitioner was not prejudiced by the original error. That error did not impair his ability to present a full defense throughout the disciplinary process, including at his second DHO hearing, during which he made a statement, a staff representative made a statement, and written statements by witness inmates identified by him were presented and considered.

### 2. The DHO's Determination Was Supported By the Requisite Degree of Evidence

Petitioner also claims that he is entitled to habeas relief because he is innocent and the DHO's finding to the contrary is wrong. In Superintendent v. Hill, 472 U.S. 445 (1985), the Supreme Court held that requiring "a modicum of evidence to support a decision to revoke good time credits will help to prevent arbitrary deprivations without threatening institutional interests or imposing undue administrative burdens." Id. at 455. The Supreme Court then held "that the

9

requirements of due process are satisfied if *some evidence* supports the decision by the disciplinary board to revoke good time credits." Id. (emphasis added); see also Young v. Kann, 926 F.2d 1396, 1402-03 (3d Cir. 1991) (applying Superintendent v. Hill standard to federal prisoner's due process challenges to prison disciplinary proceedings). Once the reviewing court determines that there is at least "some evidence" to support the findings of the DHO, the court must reject the evidentiary challenge by the petitioner and uphold the finding of the DHO. Id. "*Ascertaining whether [the] standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing the evidence.*" Id. at 455-56 (emphasis added).

In this case, there is the requisite evidence to support the DHO's determination that Petitioner committed the charged violation. BOP policy and regulations instruct inmates that it is their responsibility to keep their areas free of contraband. 28 C.F.R. § 541.12 (table, at No. 4); BOP Program Statement 5270.07, Inmate Discipline and Special Housing Units, at Chapt. 3, Page 1. Evidence was presented at the DHO hearing to establish that a weapon was found within Petitioner's area, and therefore there was sufficient evidence to support the DHO's conclusion that he violated the BOP's prohibition against possessing a weapon.

In actuality, Petitioner is contesting the application of the "constructive possession" doctrine to his case. Federal courts have held that the BOP policy that deems an inmate responsible for any contraband found within his cell does not offend due process absent exculpatory evidence that makes the finding of the inmate's "possession" so unreliable as to not satisfy the "some evidence" standard set forth in Superintendent v. Hill. See Hamilton v. O'Leary, 976 F.2d 341 (7th Cir. 1992); Okocci v. Klein, 270 F.Supp.2d 603, 613 (E.D.Pa. 2003); White v. Kane, 860 F.Supp. 1075, 1079 (E.D.Pa. 1994), aff'd, 52 F.3d 319 (3d Cir. 1995); Thompson v. Hawk, 978 F.Supp. 1421, 1423-24 (D.Kan. 1997). The application of the constructive possession doctrine has been upheld in the context of prison disciplinary proceedings that concerned the discovery of contraband in a shared room, for which no resident acknowledged responsibility. See Tweedy v. Vannatta, 101 Fed. Appx. 158 (7th Cir. 2004) (marijuana found in cup in common area in two person cell); Hamilton, 976 F.2d at 346 (six weapons were found in air vent of cell shared by four inmates); Okocci, 270 F.Supp.2d at 613 (weapon found in a two-person cell); White, 860 F.Supp. at 1079

10

(applicable where contraband was found in cell assigned to one inmate, but which was accessible to other inmates in the prison).

The United States Court of Appeals for the Third Circuit has not articulated a limit that the Due Process Clause may place upon the constructive possession doctrine. Several other courts, however, have adopted a probability analysis, based on the number of prisoners having access to the area in which contraband is discovered, to determine whether the due process requirement of "some evidence" as articulated in Superintendent v. Hill is satisfied. For example, in Hamilton v. O'Leary, 976 F.2d 341 (7th Cir. 1992), the petitioner argued that the constructive possession rule did not provide a sufficient evidentiary basis for the disciplinary committee's finding of culpability, where three other inmates also had access to the area in which the contraband had been discovered. The Court of Appeals for the Seventh Circuit rejected the petitioner's argument and ruled that "given the 25% chance of guilt, 'the record is not so devoid of evidence that the findings of the disciplinary board without support or otherwise arbitrary,'" and that such a percentage constituted "some evidence " to support the disciplinary committee's decision. Id. at 346 (citing Superintendent v. Hill, 472 U.S. at 457). See also Harms v. Godinez, 829 F.Supp. 259, 264 (N.D.Ill. 1993) (holding that "[i]f a one-in-four chance of actual guilt [as in Hamilton] does not violate the due process clause, then a one-in-six chance of guilt does not either."); Mason v. Sargent, 898 F.2d 679, 680 (8th Cir. 1990) (one-in-two chance, or 50% probability that each inmate is guilty amounts to "some evidence"); Superintendent v. Hill, 472 U.S. at 456-57 (one-in-three chance, where three inmates were seen fleeing the scene of an assault, constituted "some evidence" for purposes of constructive possession).

Here, evidence considered by the DHO demonstrated that the weapon in question was found in Petitioner's cubicle. Petitioner has not presented any evidence indicating that he shared the cubicle with so many inmates as to preclude the application of the constructive possession rule. He claimed during his administrative review process that he shared his cell with three inmates, which makes the circumstances of this case comparable to other cases in which the application of the BOP's constructive possession rule has been upheld. Hamilton, 976 F.2d at 346; Harms, 829 F.Supp. at 264.

11

In conclusion, there is no basis to expunge the incident report and sanctions imposed because Petitioner has not proved that he was denied due process or that there was insufficient evidence to support the disciplinary finding. Accordingly, his amended habeas petition should be denied for lack of merit.

### E.     Certificate of Appealability

Section 102 of the Antiterrorism and Effective Death Penalty Act (28 U.S.C. § 2253 (as amended)) codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. Amended Section 2253 provides that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." Where the federal district court has rejected a constitutional claim on its merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong[.]" Szuchon v. Lehman, 273 F.3d 299, 312 (3d Cir. 2001) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)). A petitioner meets this standard if he can show that the issue "is debatable among jurists, or that a court could resolve the issue differently, or that the question deserves further proceedings." McCracken v. Gibson, 268 F.3d 970, 984 (10th Cir. 2001). Under 28 U.S.C. § 2253(c)(3), the district court must identify which specific issues satisfy the standard.

However, federal prisoner appeals from the denial of a § 2241 habeas corpus proceeding are not governed by the certificate of appealability requirement. United States v. Cepero, 224 F.3d 256, 264-65 (3d Cir. 2000); 28 U.S.C. § 2253(c)(1)(B).

## III.    CONCLUSION

For the foregoing reasons, it is respectfully recommended that Petitioner's motion for summary judgment [Document # 10] be denied, that Petitioner's Amended Petition for Writ of Habeas Corpus be denied, and that a certificate of appealability be denied.

In accordance with 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates Judges, the parties are allowed 10 days from the date of service to file

written objections to this Report and Recommendation. Any party opposing the objections shall have 7 days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights. See Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
Chief U.S. Magistrate Judge


Dated: January 29, 2008

cc: The Honorable Sean J. McLaughlin
United States District Judge